IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

AMY WILLIAMS,

        Plaintiff,

v.                                                    CIVIL ACTION NO. 3:19-0643

MJC ACQUISITION, LLC, MATILDA
JANE, LLC,
d/b/a MATILDA JANE CLOTHING,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court is a Motion to Transfer Venue[1] filed by Defendant MJC Acquisition, LLC, Matilda Jane, LLC, d/b/a Matilda Jane Clothing ("Defendant"). *Mot. to Transfer*, ECF No. 13. Plaintiff Amy Williams ("Plaintiff") timely filed a Response in Opposition, and Defendant did the same with its Reply. *Resp. in Opp'n*, ECF No. 15; *Reply Mem.*, ECF No. 16. The relevant issues have been fully briefed and are ripe for resolution. For the reasons set forth below, the Court **GRANTS** the motion.

### I. BACKGROUND

The facts of this case are straightforward. In March 2018, Plaintiff Amy Williams—a thirty-three-year-old resident of Cabell County, West Virginia—began working as a salesperson associated with Defendant Matilda Jane. *Compl.*, at ¶¶ 1, 63. Defendant is a Fort Wayne, Indiana corporation that primarily sells clothing for women and girls through its network of "Trunk

---

[1] Though styled a "Motion to Dismiss, or Alternatively, to Transfer Venue," Defendant concedes that its arguments do not support dismissal and has since limited the scope of its motion. *Reply Mem.*, ECF No.16, at 2.

Keepers," or individuals who purchase inventories of clothes to sell to their personal networks. *Id.* at ¶¶ 2, 5–6. This business model, often referred to as multi-level marketing ("MLM"), "is a subset of direct sales in which salespeople can earn income not only through the sale of products to consumers, but also through the recruitment of additional salespeople." *Id.* at ¶ 8. As the Complaint notes, MLM salespeople—including Defendant's "Trunk Keepers"—are "commonly classified as independent contractors." *Id.* at ¶ 9.

When Plaintiff joined Defendant as a Trunk Keeper in March 2018, the company "employed thousands of salespeople" across the country. *Id.* at ¶ 11. Plaintiff had been recruited by a personal friend and experienced Trunk Keeper on the promise that she would be able to work from home and spend more time with her children. *Id.* at ¶¶ 63–64. To begin work with Defendant, Plaintiff was required to review and sign an electronic copy of the "Matilda Jane Clothing Independent Trunk Keeper Agreement" ("Trunk Keeper Agreement"). *Ex. A*, ECF No. 13-1, at 2. The agreement is six pages long, and includes a bevy of company policies and procedures for Plaintiff to abide by. *Ex. 1*, ECF No. 13-1, at 4–9. Relevant here, it also contains a choice-of-law and forum-selection clause:

> GOVERNING LAW/VENUE. This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Indiana, without reference to its conflict of laws rules. The parties agree that any controversies of any nature whatsoever arising out of or relating to this Agreement, shall be subject to the exclusive jurisdiction of the state or federal courts having jurisdiction over Allen County, Indiana, and Allen County, Indiana, shall be the exclusive jurisdiction and venue for any disputes, actions, or lawsuits arising out [of] or relating to this Agreement and you wave [sic] any argument related to jurisdiction or *forum non conviens*; except that the Company may choose, at its discretion, to file any action for your breach of Sections 6.1 through 6.7 in a court in a state or country where You can be found.

*Id.* at 8. The broad terms of this clause notwithstanding, Plaintiff electronically signed the agreement on June 29, 2018. *Ex. 2*, ECF No. 13-1, at 11.

To begin her employment, Plaintiff paid approximately $3,000 for an initial supply of clothing samples, order forms, tags, clothing racks, and other supplies. *Compl.*, at ¶ 65. Over the course of the next six months, she spent approximately $8,000 more on additional samples and supplies. *Id.* at ¶ 67. In order to sell her merchandise, she used social media sites to create groups of buyers and hold "virtual trunk sales." *Id.* at ¶ 69. Despite working full time for approximately six months, Plaintiff only earned about $1,000. *Id.* at ¶ 75. Faced with this anemic income, Plaintiff stopped selling Defendant's merchandise in October 2018. *Id.* at ¶ 73.

On September 9, 2019, Plaintiff initiated the instant lawsuit in this Court. *Id.* at 1. She based her Complaint on alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and the West Virginia Minimum Wage and Maximum Hours Standards for Employees, W. Va. Code § 21-5C-1 *et seq.* The thrust of her argument is that Defendant's policies rendered Plaintiff an employee rather than an independent contractor, and that she is entitled to damages for unpaid wages and Defendant's failure to maintain accurate records of her work. *Compl.*, at ¶¶ 80–89. On January 9, 2020, Defendant filed the instant Motion to Transfer Venue along with a Memorandum in Support. *Mot. to Transfer*, at 1; *Mem. in Support of Mot. to Transfer*, ECF No. 14. It is to the legal framework governing the resolution of this motion that the Court now turns.

## II. LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In considering a motion to transfer venue pursuant to this statutory authority, courts typically look to the "convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co., Inc. v. United States Dist. Ct. for W. Dist. Of Tx.*, 571 U.S. 49, 62 (2013). These considerations include "(1) ease of access to sources of proof; (2) the

convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice." *Keith Nicholson Servs., LLC v. Am. Petroleum Partners Operating, LLC*, No. 5:19-CV-205, No. 5:19-CV-251, 2019 WL 4580046, at *2 (N.D.W. Va. Sept. 20, 2019) (quoting *P.M. Enters. V. Color Works, Inc.*, 946 F. Supp. 436, 440 (S.D.W. Va. 1996)).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Const. Co.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)) (internal quotations omitted). In such cases, the "plaintiff's choice of forum merits no weight" and courts "should not consider arguments about the parties' private interests." *Id.* Instead, a "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (quoting *Stewart Org.*, 487 U.S. at 33 (Kennedy, J., concurring)) (internal quotations omitted). A forum selection clause "is presumptively valid . . . and is generally binding and enforceable— unless such enforcement is 'unreasonable under the circumstances.'" *Adkins v. Deangelo Bros., LLC*, No. 3:15-13151, 2016 WL 3982529, at *3 (S.D.W. Va. July 22, 2016) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

### III. DISCUSSION

In considering Defendant's motion, the Court confronts two distinct inquiries. First, it must determine whether a valid forum-selection clause exists to bind Plaintiff and Defendant. If so, it must resolve whether the clause itself is unreasonable. As the Court answers this second question in the negative, it need not weigh the relative merits of referral on other grounds.

### A. Existence of a Valid Forum-Selection Clause

Plaintiff's first argument against transfer rests upon the theory that the entire Trunk Keeper Agreement violates state law, thus rendering the forum selection clause void. *Resp. in Opp'n*, at 3. She relies on West Virginia Code § 47-15-1(a), which defines a "pyramid promotional scheme" as

> the organization of any chain letter club, pyramid club, or other group organized or brought together under any plan or device whereby fees or dues or anything of material value to be paid or given by members thereof are to be paid or given to any other member thereof, which plan or device includes any provision for the increase in such membership through a chain process of any members securing other new members and thereby advancing themselves in the group to a position where such members in turn receive fees, dues or things of material value from other members.

In turn, West Virginia Code § 47-15-2 makes it unlawful to "promote any pyramid promotional scheme, either personally or thorough an agent or agents." Finally, Section 47-15-3 of the West Virginia Code provides that "[a]ll contracts and agreements . . . wherein the whole or any part of the consideration of such contract or agreement is given in exchange for the right to participate in any pyramid promotional scheme are hereby declared to be against public policy and are hereby declared to be void and unenforceable."

Plaintiff contends that "Defendant was operating as an unlawful pyramid promotional scheme," thereby rendering the entire Trunk Keeper Agreement—including the forum-selection clause—void and unenforceable. *Resp. in Opp'n*, at 4. The Court disagrees. Whether or not the contract is void under West Virginia law, the Court must determine whether this case is properly before it. This, of course, is a question of federal law that the Court considers in the next section of its discussion. Yet even apart from this inquiry, the Court notes that attacking the underlying validity of a contract is an insufficient basis for rejecting an otherwise valid forum-selection clause. For example, a plaintiff who alleges that a contract is the product of fraud cannot circumvent a

mandatory forum-selection clause contained in an allegedly invalid contract. *Manchin v. QS-1 Data Sys.*, No. 1:12CV93, 2013 WL 4099849, at 2–3 (N.D.W. Va. Aug. 12, 2013). This rule allows "more general claims of fraud [to] be litigated *in [a] chosen forum*, in accordance with the contractual expectations of the parties." *Sheldon v. Hart*, No. 5:09CV51, 2010 WL 114007, at *5 (N.D.W. Va. 2010) (quoting *Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1296 (11th Cir. 1998)) (emphasis in original). The same is true for allegations that a contract is void as a matter of law. While such allegations, "if proved[,] might be relevant to the merits of the claims in the absence of a forum selection clause, [it] is wholly inapposite to [this Court's] enforceability determination, which must of course precede any analysis of the merits." *Id.* at *6 (quoting *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)) (internal quotations omitted). It follows that the Court will look to the enforceability of the forum-selection clause apart from any allegations related to the underlying validity of the contract.

### B. Reasonableness of Forum-Selection Clause

Having concluded that that the validity of the entire Trust Keeper Agreement is a question separate from the validity of the forum-selection clause it contains, the Court turns to a consideration of whether the clause itself is nevertheless unreasonable. This is the central question that governs the resolution of this matter, as courts will not enforce forum-selection clauses that are "unreasonable under the circumstances." *M/S Bremen*, 407 U.S. at 10. Forum-selection clauses

> may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996). Plaintiff does not allege that the formation of the Trunk Keeper Agreement was induced by fraud or overreaching, or that she will

be deprived of her day in court by transferring this action to the Northern District of Indiana.[2] Nor does she claim that transfer will deprive her of a remedy; as is obvious, courts in the Northern District of Indiana possess the same remedial powers as those in the Southern District of West Virginia.

Plaintiff's argument therefore rests on the fourth factor: that enforcement of the forum-selection clause will contravene a strong public policy of West Virginia. For support, she points to West Virginia Code § 47-15-3, which holds that "[a]ll contracts and agreements . . . wherein the whole or any part of the consideration of such contract or agreement is given in exchange for the right to participate in any pyramid promotional scheme are hereby declared to be against public policy." This argument is well-taken, but it ignores the simple fact that Plaintiff has not alleged that Defendant is operating a pyramid promotional scheme. Though it is easy enough to draw parallels between MLM schemes and true pyramid promotional schemes, "[n]ot all MLM businesses are illegal pyramid schemes." *F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 883 (9th Cir. 2014). While the Fourth Circuit Court of Appeals has not enunciated a test for distinguishing between legitimate MLM companies and illegitimate pyramid schemes, other courts tend to focus on whether a recruiter receives a benefit for finding new salespeople that is completely disconnected from the sale of a given product. *See United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 475 (6th Cir. 1999) ("MLM programs survive by making money off product sales, not new recruits. In contrast, 'pyramid schemes' reward participants for inducing other people to join the

---

[2] The Court recognizes that pursuing this action in Indiana will be less convenient for Plaintiff than doing so in West Virginia. Nevertheless, the Fourth Circuit Court of Appeals has set a high bar for plaintiffs to clear with respect to "gravely" inconvenient forums. *See Baker v. Adidas Am., Inc.*, 335 F. App'x 356, at *361 (4th Cir. 2009) (enforcing forum-selection clause requiring unemployed North Carolina college student to litigate claims in Amsterdam).

program; over time, the hierarchy of participants resembles a pyramid as newer, larger layers of participants join the established structure.").

Whatever this distinction is in practice, Plaintiff has not alleged sufficient facts to conclude that Defendant is operating a pyramid scheme here. Neither the word "pyramid" nor any of the state laws she references in her Response appear anywhere in the Complaint; to the contrary, she repeatedly characterizes Defendant as a business employing MLM strategies. *See*, *e.g.*, *Compl.*, at ¶¶ 6, 8. Beyond mere labels, she points to facts suggesting that selling merchandise was a core function of Trunk Keepers throughout the organization. *Id.* at ¶ 11. It is likely for this reason that Plaintiff does not seek to invalidate Defendant's business model as an illegal pyramid scheme; instead, she seeks to recover lost wages and damages for violations of state and federal labor laws. And while the Court recognizes that further factual development may lend support to Plaintiff's undeveloped theory that Defendant is operating a pyramid scheme, her pursuit of these claims is not limited to West Virginia. *See* Ind. Code § 24-13-2-1 ("A person may not establish, promote, or operate any pyramid promotional scheme."). Transferring this matter therefore has no effect on the stated public policy of West Virginia regarding pyramid schemes, which appears to closely mirror that of Indiana.

Simply put: for the purposes of considering a motion to transfer, Plaintiff has not alleged facts that would allow this court to conclude, as a matter of law, that Defendant is operating contrary to West Virginia law and that its contract with Plaintiff runs against public policy. As such, she has not demonstrated that the forum-selection clause in the Trust Keeper Agreement is unreasonable. This Court is bound by the command that district courts must "transfer [a] case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Const. Co.*, 571 U.S. at 52. As no such circumstances exist here, this action

must be transferred to the Northern District of Indiana in accordance with the parties' forum-selection clause.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Transfer Venue, ECF No. 13, and **DIRECTS** the Clerk to **TRANSFER** this action to the Northern District of Indiana, Fort Wayne Division, **REMOVE** it from the docket, and send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 6, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE