UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMY WILLIAMS,<br><br>            Plaintiff,<br><br>    v.<br><br>MJC ACQUISITION, LLC,<br><br>            Defendant. | CAUSE NO. 1:20-cv-68 DRL-SLC |

## OPINION & ORDER

Amy Williams filed this action in the United States District Court for the Southern District of West Virginia seeking unpaid wages under the Fair Labor Standards Act and state law. On February 6, 2020, then-presiding Judge Robert C. Chambers ordered the case transferred to this district. Ms. Williams asks this court to send it back so that Judge Chambers can reconsider the transfer or alternatively asks this court to reconsider the transfer order. Because her claims arise from or relate to a contract containing a valid and reasonable forum selection clause directing any federal suit to the Northern District of Indiana, the court denies her motion.

## BACKGROUND

Neither party objects to the facts in the transfer order, so the court adopts its findings for purposes here. In March 2018, Ms. Williams began working as a salesperson for MJC Acquisition, LLC, d/b/a Matilda Jane Clothing (MJC). MJC is an Indiana corporation that primarily sells clothing for women and girls through its network of "Trunk Keepers," or individuals who purchase inventory to sell to their personal networks. This business model, often referred to as multi-level marketing (MLM), is a subset of direct sales in which salespeople can earn income through not only product sales to consumers but also recruitment of additional salespeople. "Trunk Keepers" are commonly classified as independent contractors.

When Ms. Williams joined MJC, the company employed thousands of people. She was recruited by a friend and experienced Trunk Keeper on the promise that she would be able to work from home and spend more time with her children. Before working with MJC, Ms. Williams was required to sign an electronic copy of the Matilda Jane Clothing Independent Trunk Keeper Agreement, with both MJC and Ms. Williams as parties to the contract. ECF 44-1. The six-page agreement includes a list of policies and procedures. It also contains a choice-of-law and forum selection clause:

> GOVERNING LAW/VENUE. This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Indiana, without reference to its conflict of laws rules. The parties agree that any controversies of any nature whatsoever arising out of or relating to this Agreement, shall be subject to the exclusive jurisdiction of the state or federal courts having jurisdiction over Allen County, Indiana, and Allen County, Indiana, shall be the exclusive jurisdiction and venue for any disputes, actions, or lawsuits arising out [of] or relating to this Agreement and you wave [*sic*] any argument related to jurisdiction or *forum non conviens* [*sic*]; except that the Company may choose, at its discretion, to file any action for your breach of Sections 6.1 through 6.7 in a court in a state or county where You can be found.

*Id.* at 11 ¶ 7.4. Ms. Williams electronically signed the agreement on June 29, 2018.

To begin, Ms. Williams paid approximately $3,000 for an initial supply of clothing samples, order forms, tags, clothing racks, and other supplies. Over the course of the next six months, she spent approximately $8,000 more on additional samples and supplies. To sell her merchandise, she used social media sites to create groups of buyers and to hold virtual trunk sales. Despite working full time for approximately six months, she says she only earned about $1,000. Faced with this low income, she stopped selling the merchandise in October 2018.

On September 9, 2019, Ms. Williams filed this lawsuit against MJC in the Southern District of West Virginia. She argued that MJC violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the West Virginia Minimum Wage and Maximum Hours Standards for Employees, W. Va. Code § 21-5C-1 *et seq.* Essentially, she says she was an employee rather than an independent contractor, so she is entitled to damages for unpaid wages. On February 6, 2020, the West Virginia district court transferred

2

the case here. Ms. Williams thereafter requested that the case be sent back. She had already voluntarily dismissed Matilda Jane, leaving only MJC as defendant.

## DISCUSSION

A Rule 54(b) motion for reconsideration allows this court to reconsider any non-final order, such as an order transferring venue, "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). Ordinarily, a motion for reconsideration is decided by the judge who made the original ruling.

When a party seeks reconsideration of an order transferring a case to another district and that case has already been transferred, however, a unique situation arises to permit another district judge to reconsider the previous district judge's order. Once the transfer occurs, the transferor court loses jurisdiction over the case. *Jones v. InfoCure Corp.*, 310 F.3d 529, 533 (7th Cir. 2002); *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (*en banc*). Accordingly, as a practical matter, court clerks often retain case files until a sufficient period of time has passed in which a party might seek reconsideration. *See In re Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir. 1982); *Semro v. Halstead Enters., Inc.*, 619 F. Supp. 682, 683 (N.D. Ill. 1985). When that doesn't happen, the party seeking retransfer can request the transferee court to transfer the case back. *See Capstone Int'l, Inc. v. Univentures, Inc.*, 2011 U.S. Dist. LEXIS 129745, 5 (N.D. Ind. Nov. 8, 2011) (DeGuilio, J.).

This case was transferred here a mere four days after the order granting transfer, so the court has the authority to reconsider Judge Chambers' order. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816-17 (1988). The court's discretion in reconsidering the order is significantly limited nevertheless.

First, the court adheres to the law of the case doctrine. Though the court "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly

3

erroneous and would work a manifest injustice.'" *Christianson*, 486 U.S. at 817 (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). This rule applies especially to those decisions involving transfer because courts don't want to "send litigants into a vicious circle of litigation." *Id.* at 816; *see In re Mathias*, 867 F.3d 727, 730 (7th Cir. 2017); *United States v. Wyatt*, 672 F.3d 519, 523 (7th Cir. 2012); *see also Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (avoid "perpetual litigation by playing jurisdictional ping-pong"). Generally, then, this court shouldn't "respond by batting the suit back again." *Wyatt*, 672 F.3d at 523.

Second, the statute governing the transfer order (28 U.S.C. § 1404) gave the West Virginia district court broad discretion:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). Districts court have "broad discretion to grant or deny a motion to transfer under § 1404(a)." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Together, the law of the case doctrine and the district court's broad discretion under 28 U.S.C. § 1404(a) presents an uphill battle to reverse the transfer order here. *See In re Mathias*, 867 F.3d at 730.

At the outset, the court denies the request to retransfer this case for the West Virginia district court to reconsider its order. To do so would be inefficient, force the litigants into an unenviable circle of litigation, and begin the jurisdictional ping-pong that should be avoided. The court instead turns to the request to reconsider the transfer order.

The transfer order relied on the forum selection clause pointing to this federal venue. The enforceability of forum selection clauses in the § 1404(a) context was recently addressed by the United States Supreme Court in *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013). A "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy,

4

J., concurring)); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (court should enforce forum selection clause unless plaintiff shows it is "unreasonable under the circumstances"). When the parties have agreed to a valid forum selection clause, the plaintiff's choice of forum "merits no weight," and she instead has the burden to establish that "transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. So *Atlantic Marine* directs the court to determine whether the forum selection clause is valid, and, even if valid, whether Ms. Williams has met her burden establishing the transfer to this district was unwarranted. Federal law governs the validity of a forum selection clause in § 1404(a) disputes. *See IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006).

Ms. Williams invites a preliminary argument. She says the forum selection clause shouldn't apply because this case doesn't arise from her employment contract but instead relies only on federal and state statutory promises of minimum wage. This argument is hogwash. The forum selection clause states that "any controversies of any nature whatsoever arising out of or relating to" the Trunk Keeper Agreement must be brought here. The language "arises from or relates to" remains the broadest of language. *See Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033-34 (7th Cir. 2012) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). The basis for wages stems directly from the contract here. In addition, Ms. Williams says she should be reclassified as an "employee" rather than an "independent contractor" as specified in the contract, a claim that certainly arises from or relates to this contract. The contract also incorporates by reference the compensation plan that outlines her earning abilities, and that is what she is challenging here.

This forum selection clause is also enforceable. Judge Chambers found the choice of forum valid. Ms. Williams says this was erroneous because the underlying contract is void as a contract in furtherance of an unlawful pyramid scheme. Discarding a forum selection clause remains difficult, especially given the deferential standard at the motion to reconsider stage. After all, forum selection

clauses are presumptively enforceable. *See M/S Bremen*, 407 U.S. at 15; *Heller Fin., Inc.*, 883 F.2d at 1290-91. Ms. Williams misses a vital point: determining the validity of a forum selection clause is a distinct analysis from determining the validity of the underlying contract.

Two cases from this circuit illustrate this principle. In *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 886 (7th Cir. 2004), the parties entered into a contract with a forum selection clause requiring any suit to be brought in Bermuda. The plaintiff instead sued in Chicago. The plaintiff argued that the forum selection clause shouldn't apply because the contract was fraudulently formed, but the circuit held that claims of underlying fraud in the contract don't invalidate an otherwise valid forum selection clause. *Id.* at 889. To hold otherwise allows a plaintiff to defeat a choice of forum through his "choice of provisions to sue on [or] of legal theories to press[.]" *Id.* at 888.

Similarly, in *Feather v. SSM Health Care*, 216 F. Supp.3d 934, 942-43 (S.D. Ill. 2016), a plaintiff argued that a forum selection clause should not be enforced when the underlying contract required each party to pay its own attorney fees in contravention of federal law. Rejecting this argument, the court noted that the fee provision was "clearly separate and distinct" from the forum selection clause, so the validity of both portions of the contract didn't "rise and fall together." *Id.* at 943. The court noted that "the purported unenforceability of the attorney fee clause would [not] automatically render the forum selection clause unenforceable as well." *Id.*

As Judge Chambers pointed out in his opinion, the forum selection clause here is separable from other portions of the contract. The contract contains a separately labeled severability clause that says that if any portion of the contract is declared unenforceable, the other separate paragraphs will remain in place unless they likewise are unenforceable. *See Feather*, 216 F. Supp.3d at 943 (citing cases); *see also Scovill v. WSYX/ABC*, 425 F.3d 1012, 1016-17 (6th Cir. 2005) (agreement with two severability clauses allowed court to sever unenforceable provisions of an arbitration agreement so that it could enforce the remaining provisions of the agreement). Ms. Williams can't simply allege that the contract

was an employment contract for a pyramid scheme and thereby get out of the forum selection clause—instead, she needs to show that the particular forum selection clause was invalid or the result of fraud. *See Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301-02 (5th Cir. 1998) ("Were we to judge the soundness of the forum-selection clause by what we believe to be the merits of the underlying contract, we would subvert the aforementioned comity concerns by making a merits inquiry that the Supreme Court has determined is best left to the forum selected by the parties."). She hasn't done so. Judge Chambers was right to enforce the choice of forum.

Judge Chambers then assessed whether the forum selection clause was reasonable. Relying on Fourth Circuit precedent, within which his district is located, he found that Ms. Williams had failed to meet her burden of unreasonableness under any of the methods enumerated in *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996). His analysis centered on the rule that forum selection clauses may be found unreasonable if "their enforcement would contravene a strong public policy of the forum state." *Id.* He didn't find that to be the case here, and Ms. Williams challenges that determination. Here, under that circuit's analysis or this circuit's standards, *see AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir. 2001) (same public policy exception), the forum selection clause is reasonable and enforceable.

Ms. Williams says MJC operates an unlawful pyramid scheme under West Virginia law, so West Virginia has a strong public interest in policing this agreement. Even taking her point as true, Judge Chambers wisely pointed out that Ms. Williams never alleged that MJC was operating a pyramid scheme in her complaint. She seeks to recover lost wages and damages for violations of state and federal labor laws; she doesn't seek to invalidate MJC's business model as an illegal pyramid scheme. It may be true that further discovery would lend support to her argument that MJC operates a pyramid scheme; but disavowing the forum selection clause on the grounds that it might violate the law of a state certainly puts the cart before the horse.

West Virginia law also holds that enforcement of forum selection clauses is not contrary to public policies of its state and that "such clauses are deserving of enforcement," *see State ex rel. Airsquid Ventures, Inc. v. Hummel*, 778 S.E.2d 591, 595 (W. Va. 2015), and it has a public policy of "freedom of contract," *Wellington Power Corp. v. CNA Sur. Corp.*, 614 S.E.2d 680, 687 (W. Va. 2005). Enforcement of this valid forum selection clause benefits West Virginia's public policies in at least some areas, even if Ms. Williams might in the future pursue other claims that implicate other state public policies. *See also Am. Patriot Ins. Agency, Inc.*, 364 F.3d at 888.

Judge Chambers was right to conclude likewise. Ms. Williams didn't allege that MJC operated a pyramid scheme in her complaint and asserts no cause of action related to a pyramid scheme. Instead, she refers to MJC as an MLM organization, but an MLM organization is distinct from a pyramid scheme. *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 883 (9th Cir. 2014); *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 475 (6th Cir. 1999). She also hasn't shown that enforcement of Indiana's laws would contravene a "strong public policy" of West Virginia when Indiana also outlaws pyramid schemes. *See* Ind. Code § 24-13-2-1. In short, Judge Chambers thoroughly articulated his rationale for the transfer, and this court cannot say that there were any clear errors in his order or extraordinary circumstances that would cause manifest injustice by proceeding in this district. *See Christianson*, 486 U.S. at 817.

If Ms. Williams thinks that West Virginia law should apply in this case, she has the right to argue that in front of this court in the context of a choice-of-law dispute. A forum selection clause doesn't mean that the substantive laws of another state wouldn't apply. *See Atl. Marine*, 571 U.S. at 67 ("federal judges routinely apply the law of a State other than the State in which they sit"). That said, the Trunk Agreement does contain a choice-of-law provision saying that the contract is governed by Indiana law, and "Indiana choice of law doctrine generally favors contractual stipulations as to governing law." *See Zimmer, Inc. v. Sharpe*, 651 F. Supp.2d 840, 847 (N.D. Ind. 2009) (Miller, J.). The court is not deciding that issue today.

CONCLUSION

Ms. Williams has failed to meet her burden to show that this is one of the "extraordinary circumstances" warranting this court to reverse a previous order. Decisions regarding transfer under 28 U.S.C. § 1404(a) are discretionary; and, coupled with the law of the case doctrine and the enforceability of this forum selection clause, Ms. Williams failed to meet her heavy burden showing that the transfer order was erroneous. Accordingly, the court DENIES the motion to reconsider the transfer order or to transfer this case back to the West Virginia district court (ECF 34). The case remains pending here.

SO ORDERED.

June 22, 2020              *s/ Damon R. Leichty*
                           Judge, United States District Court